[Cite as *State v. Smith*, 2014-Ohio-2232.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA )

| | |
|---|---|
| STATE OF OHIO | C.A. No. 13CA0043-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DARYLE W. SMITH | COURT OF COMMON PLEAS COUNTY OF MEDNA, OHIO |
| Appellant | CASE No. 95CR0434 |

DECISION AND JOURNAL ENTRY

Dated: May 27, 2014

WHITMORE, Judge.

{¶1} Defendant-Appellant, Daryle Smith, appeals from the judgment of the Medina County Court of Common Pleas, denying his application to seal his record. This Court reverses.

I

{¶2} In 1996, Smith was convicted of drug trafficking, a fourth-degree felony, in the Medina County Court of Common Pleas. The court sentenced Smith to six months in prison, but suspended his sentence and placed him on one year of probation. Smith completed his probation without incident and was released from supervision later that same year.

{¶3} In December 2002, Smith was indicted in Clark County, Nevada. He was charged with: (1) conspiracy to commit the crime of grand larceny, a gross misdemeanor; (2) conspiracy to commit the crime of grand larceny auto, a gross misdemeanor; (3) grand larceny, a felony; and (4) carrying a concealed weapon, a gross misdemeanor. Smith ultimately pleaded guilty to one count of conspiracy to commit grand larceny auto, a gross misdemeanor, in exchange for the

dismissal of the remaining counts. The District Court of Clark County sentenced him to 90 days in the Clark County Detention Center, suspended on the condition that he "stay out of trouble and pay $1,000.00 fine."

{¶4} In January 2013, Smith filed an application for sealing in the Medina County Court of Common Pleas, seeking to have the record of his drug trafficking conviction sealed. In responding to the application, the State noted that a criminal history check had not divulged any subsequent convictions or arrests and that Smith "appear[ed] to be living a law-abiding life." Consequently, the State wrote that it had no objection to the application.

{¶5} On March 22, 2013, the trial court held a hearing on Smith's application. After confusion arose regarding the existence and status of Smith's conviction in Nevada, the court ended the hearing and informed Smith that he had to give the court "something that show[ed] that [the Nevada case] was dismissed." The court issued a journal entry in which it denied Smith's application, but indicated that it would "reconsider the [application] if [Smith] [could] provide proof that the Nevada case did not result in a conviction."

{¶6} The same day that the court issued its journal entry, Smith filed a motion for reconsideration. Smith acknowledged that he had a gross misdemeanor conviction from Nevada and attached his indictment, plea agreement, and judgment entry from Nevada to his motion. He argued that he was eligible for sealing because he had no more than one felony conviction (drug trafficking) and one misdemeanor conviction (conspiracy to commit grand larceny auto). *See* 2953.31(A). He further argued that he satisfied all of the remaining criteria for sealing. The State did not file a response to Smith's motion.

{¶7}    The trial court held a second hearing on April 26, 2013.  At the conclusion of the hearing, the court indicated that it would take the matter under advisement.  On April 29, 2013, the court issued a decision denying Smith's application for sealing.

{¶8}    Smith now appeals from the trial court's judgment and raises three assignments of error for our review.  For ease of analysis, we consolidate two of the assignments of error.

II

Assignment of Error Number One

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO WEIGH THE INTERESTS OF DARYLE SMITH IN HAVING HIS RECORD SEALED AGAINST THE LEGITIMATE INTERESTS OF THE STATE, IF ANY, IN MAINTAINING HIS RECORD.

Assignment of Error Number Two

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO DETERMINE WHETHER DARYLE SMITH HAS BEEN REHABILITATED.

{¶9}    In his first and second assignments of error, Smith argues that the trial court erred when it denied his application for sealing without first considering all of the statutory factors outlined in R.C. 2953.32.  We agree.

{¶10}  "Neither the United States Constitution nor the Ohio Constitution endows one convicted of a crime with a substantive right to have the record of a conviction expunged. Instead, expungement is an act of grace created by the state."  (Internal citations omitted.)  *State v. Hamilton*, 75 Ohio St.3d 636, 639 (1996).  R.C. 2953.32(A)(1) permits an eligible offender to apply for the sealing of his felony conviction record "at the expiration of three years after the offender's final discharge."  An "eligible offender" includes an offender who has been convicted of "not more than one felony conviction and one misdemeanor conviction in this state or any

other jurisdiction." R.C. 2953.31(A). In considering an application for sealing, a trial court must:

> (a) Determine whether the applicant is an eligible offender * * *[;]
>
> (b) Determine whether criminal proceedings are pending against the applicant;
>
> (c) * * * [D]etermine whether the applicant has been rehabilitated to the satisfaction of the court;
>
> (d) If the prosecutor has filed an objection * * *, consider the reasons against granting the application specified by the prosecutor in the objection; [and]
>
> (e) Weigh the interests of the applicant in having the records pertaining to the applicant's conviction sealed against the legitimate needs, if any, of the government to maintain those records.

R.C. 2953.32(C)(1). Although a trial court is not required to make express findings in granting or denying an application for sealing, the record must reflect that the court complied with R.C. 2953.32's mandates in making its decision.

{¶11} As previously noted, the trial court conducted two hearings after Smith filed his application for sealing. At the first hearing, Smith and his attorney briefly described how Smith had lived a law-abiding life for many years and how he wished to have his felony conviction expunged because it was affecting his employment opportunities. The court then informed Smith that the probation department was disputing Smith's eligibility for sealing because of a subsequent conviction in Nevada. The court stated: "See, you're allowed to expunge a record if you don't have a subsequent conviction, but something happened in Nevada and I don't know what that's about." When the court asked Smith what had happened in Nevada, Smith briefly explained that he was drinking with a group of men who decided to take a joyride in a vehicle belonging to the casino. He stated that he was questioned about the incident and "was charged with a misdemeanor of knowledge of that [he] knew they were taking that vehicle." Smith also stated, however, that he was "released of all charges" on the case and had not been convicted.

The court then ended the hearing by telling Smith: "You've got to get me something that shows that this case was dismissed, because that's the thing that's preventing me from granting [the application for sealing]."

{¶12} In his motion for reconsideration, Smith argued that he was eligible for expungement because his Nevada case only resulted in a misdemeanor conviction. He further argued that the reason he had told the court that he had not been convicted in Nevada was because he thought the court was asking him about felony convictions, not misdemeanor convictions. The State did not file any response to Smith's motion for reconsideration.

{¶13} At the second hearing, Smith's counsel began by noting for the court that amendments to the Revised Code had changed the definition of an eligible offender for purposes of sealing. Smith's counsel noted that Smith was still eligible for sealing in spite of a misdemeanor conviction in Nevada because the statute now included in the "eligible offender" definition an offender with one felony conviction and one misdemeanor conviction. *See* 2953.31(A). The following exchange then took place:

THE COURT: I didn't say he wasn't eligible.

[DEFENSE COUNSEL]: Okay.

THE COURT: You're laboring under the misconception that I have to do this. It's at the discretion of the Court.

[DEFENSE COUNSEL]: Right.

THE COURT: Not "right." I mean really.

[DEFENSE COUNSEL]: Right.

THE COURT: I take it very seriously. If he's got another conviction, I want to know about it.

I don't have to grant it. If he has a misdemeanor, I don't have to grant it. If he does have a misdemeanor, that just means he's eligible to file.

It's my determination to make whether I'm going to grant this thing or not. I'm weighing and balancing the State's interest in keeping this versus your client's interest in having it expunged.

So what would you like to tell me?

Defense counsel then explained the facts underlying the Nevada case. He explained that Smith went to Las Vegas with several co-workers who, after consuming alcohol, decided to take a casino shuttle van for a joy ride. He further explained that Smith declined to go with the men, but was charged along with them because he had knowledge of their plan to take the van. Defense counsel stated that Smith ultimately pleaded guilty to conspiracy to commit grand larceny auto, which was a gross misdemeanor. The court, however, insisted on an explanation as to why Smith had pleaded guilty to anything if he truly had such a limited role in the incident. When defense counsel indicated that he did not know why, the court began questioning Smith.

{¶14} The court began by discussing Smith's 1996 drug trafficking conviction. The court described the 1996 case as having started out as a theft and drug trafficking case in which Smith stole money from the police department when the police were trying to conduct a sting. The court then asked Smith if the foregoing assessment was accurate, and Smith indicated that it was not. Smith attempted to explain that he was arrested after he accepted money from an undercover police officer in exchange for selling marijuana to the officer. The court, however, pressed Smith and became increasingly frustrated at Smith's responses, which the court apparently perceived as a refusal on Smith's part to accept responsibility for the 1996 case. The court then turned to the Nevada case.

{¶15} Smith described the factual circumstances surrounding the Nevada case and responded to multiple questions from the trial court about the specific facts of the case. Smith repeatedly indicated that he had no role in taking the shuttle van from the casino, but that he was

questioned by the Nevada police and ultimately charged along with his co-workers. Smith stated that he hired an attorney and ultimately pleaded guilty to conspiracy, but he was unable to explain what a conspiracy was or the thought-process underlying his decision to plead guilty. Smith simply maintained that he did not steal the shuttle van. The following exchange took place on the record:

THE COURT: So why did you plead to [conspiracy]?

MR. SMITH: I pled guilty.

THE COURT: Why? I know what you did. I want to know why. You were a wholly innocent man, right?

MR. SMITH: I did not take that van.

THE COURT: That's what I'm saying.

MR. SMITH: (Shrugging shoulders.)

THE COURT: You probably didn't kill Kennedy, either. That's not what I'm talking about. You were a completely innocent man. You did not commit any criminal offenses.

MR. SMITH: No.

THE COURT: "No" you did?

MR. SMITH: I didn't take the van.

THE COURT: This is the hardest thing I've had to do all week, and I don't understand why it's so hard. I'm just trying to find out what your involvement in this thing was.

MR. SMITH: I wasn't involved. My involvement was the knowledge of them taking the van.

THE COURT: That's not a crime. Why did you plead to -- why did you plead to this offense?

MR. SMITH: Conspiracy to commit. We were all talking about it, you know.

THE COURT: All right. And what act did you take to further the conspiracy? What did you do?

MR. SMITH: I didn't take the van. I wasn't involved in that.

THE COURT: Wow.

The court then held a discussion off the record with Smith and his counsel, asked Smith on the record if he had anything further to say, and terminated the hearing when Smith indicated that he did not. The court's judgment entry reads merely that Smith's application for sealing is denied.

{¶16} "A trial court has a significant amount of discretion in determining whether a petitioner has been rehabilitated satisfactorily and whether the expungement is consistent with the public interest. However, a court is not afforded any discretion in complying with all of the statute's requirements." (Internal citation omitted.) *State v. Cuttiford*, 9th Dist. Lorain No. 97CA006724, 1998 WL 78695, *3 (Feb. 11, 1998). In ruling on an application for sealing, a trial court must comply with the mandates set forth in R.C. Chapter 2953. *See State v. Widder*, 146 Ohio App.3d 445, 448-449 (9th Dist.2001). Further, "[t]he trial court must [] provide sufficient information in its decision to enable a reviewing court to ascertain whether it has considered all matters that must be evaluated and whether it has applied the correct tests under the statute." *Cuttiford* at *3.

{¶17} There is no evidence in the record that the trial court determined whether Smith had been rehabilitated to the court's satisfaction or weighed Smith's interests in having his felony record sealed versus the State's interest in maintaining the record of his conviction. The only input the State had at the trial court level was in a response to Smith's application for sealing. In its response, the State wrote that Smith appeared to be living a law-abiding life and that it had no objection to his application. The State never amended its response, and the prosecutor never uttered a word at either hearing on Smith's application. Although the court stated at the outset of the second hearing that it was its duty to weigh Smith's and the State's

interests, "there was nothing for it to weigh on the government's side." *Wyatt*, 2011-Ohio-6738, at ¶ 15.

{¶18} Smith filed six letters in support of his application for sealing, four of which were from members of the Parma Police Department. The trial court did not reference any of the letters Smith filed and never questioned any of Smith's rehabilitative efforts. Instead, the record evinces that the court focused entirely on the circumstances behind Smith's prior convictions, one of which was approximately 17 years old and the other of which was approximately 11 years old. There is no evidence in the record that the court actually determined whether Smith had been rehabilitated to the court's satisfaction. *See Stringer*, 2009-Ohio-909, at ¶ 7. Likewise, there is no evidence that the court weighed the interests of Smith versus the interests of the State. *See Wyatt* at ¶14-15. We, therefore, reverse the trial court's decision and remand this matter for the trial court to correctly apply R.C. 2953.32(C). *See id.*; *Widder* at 448-449. *See also State v. Gilchrist*, 9th Dist. Summit No. 16800, 1994 WL 686838, *2 (Dec. 7, 1994) (denial of sealing under R.C. 2953.52 reversed where no evidence in the record that court weighed parties' competing interests and the State had not provided any evidence). Smith's first and second assignments of error are sustained.

<u>Assignment of Error Number Three</u>

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING DARYLE SMITH'S APPLICATION FOR SEALING OF RECORD.

{¶19} In his third assignment of error, Smith argues that the trial court abused its discretion by denying his application for sealing. In light of our resolution of Smith's other assignments of error, this argument is not yet ripe for our review. As such, we decline to address it.

III

{¶20} Smith's first and second assignments of error are sustained. His third assignment of error is not yet ripe for our review. The judgment of the Medina County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

BETH WHITMORE
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

JOHN BROOKS CAMERON and CHRISTOPHER JANKOWSKI, Attorneys at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.